UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 7: 15-018 |
| ) | |
| V. ) | |
| ) | |
| GARY RISNER, et al., ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On March 30, 2016, the United States provided notice of its intent to admit certain evidence as inextricably intertwined background evidence or, in the alternative, as "other acts" evidence pursuant to Federal Rule of Evidence 404(b). [Record No. 79] Defendant Gary Risner filed a motion *in limine* to exclude this evidence [Record No. 104], which the Court denied on May 17, 2016. [Record No. 114] The matter is currently pending for consideration of Defendant Larry Shepherd's motion *in limine* [Record No. 120] to exclude the same evidence, as well similar additional evidence recently identified by the government. [Record No. 123] Risner[1] has also filed a motion *in limine* to exclude the recently identified evidence. [Record No. 137] For the reasons that follow, the Court will deny the motions to exclude.

**I.**

Risner, Shepherd, and others are charged with conspiring to buy votes and buying votes in 2013 and 2014 during an election in Magoffin County, Kentucky, in violation of 18 U.S.C.

---

[1] Co-Defendant Tami Jo Risner, shares a surname with the movant. For the purposes of this Memorandum Opinion and Order, "Risner" will refer only to Gary Risner.

-1-

§ 371 and 52 U.S.C. § 10307(c).  [Record No. 60]  The United States intends to present the testimony of Scott McCarty who reports that he was significantly involved with individuals who bought votes during elections held in Magoffin County from 2002 through 2014.  [Record Nos. 109-1, p. 1; 123-3, pp. 1–3]  FBI Special Agent Ken Kirk interviewed McCarty on two occasions in 2016.  [Record Nos. 109-1, 123-3]  McCarty's earliest recollection was from the 2002 election cycle when McCarty had obtained three absentee ballots, which he took to Charles "Doc" Hardin's medical office.  [Record No. 123-3, p. 1]  McCarty stated that Hardin gave him ten $100.00 bills and instructed him to "take care" of the ballots.  *Id.*  McCarty then paid $50.00 to the individuals who had given him their ballots.  *Id.*  Hardin advised McCarty that he now understood Magoffin County politics.  *Id.*  McCarty stated that you learn to buy and sell ballots in Magoffin County by word of mouth.  *Id.*  He further advised Agent Kirk that Larry and Renee Shepherd, among others, are supporters of Charles Hardin.  *Id.*

According to McCarty, Charles Hardin made him a member of the Election Board for the first time in 2006.  *Id.*  McCarty was the Democratic Judge for the Carty Branch Precinct.  *Id.*, p. 2.  Risner was running for County Magistrate at the time.  *Id.*  Anyone who was selling his or her vote went to McCarty's line and McCarty confirmed that the person voted had for Hardin, Risner, Renee Shepherd, and Jerry Swiney.  *Id.*

McCarty reported that, in 2008, Risner supported his friend, John Sizemore, for State Representative.  *Id.*  McCarty was the Democratic Judge at the Carty Branch Precinct and McCarty's cousin, Rodney Patrick, was the Republican Judge.  *Id.*  McCarty and Patrick, along with the other two election board members, unsealed the voting machines prior to the beginning of the election.  *Id.*  According to McCarty, Risner told him he needed to vote "some extra votes."  *Id.*  Larry Shepherd instructed Risner not to seal the bag, because the votes would

not match the signatures. *Id.* Risner then told McCarty to bring the unsealed bag and voter register to Risner's home. *Id.* McCarty stated that, during the election, he placed the "personal electronic ballot" in the machine and cast additional votes. For every vote he cast, he took a penny out of one pants pocket and moved it to the other pocket. *Id.* By the end of the day, he had 60 pennies in his pocket to represent the 60 votes he had cast. After the polls closed, McCarty and Patrick took the unsealed election bag and register to Risner's home. *Id.* McCarty told Agent Kirk that he watched Risner sign the voter register 60 times for 60 different voters who did not vote. *Id.* Afterwards, the men sealed the bag and McCarty delivered it to the Magoffin County Courthouse. There, McCarty gave the bag to Shepherd, who did not question why the bag was late. *Id.*

McCarty stated that, in May 2010, an individual named Stetson Stevens called McCarty, asking where to sell votes. [Record No. 109-1, p. 3] According to McCarty, Randy Salyer and Larry Shepherd said to bring voters to the courthouse. *Id.* McCarty further contends that he and Shepherd assisted the individuals in voting. The individuals were required to vote for Larry Swinney, Charles Hardin, and Renee Shepherd. *Id.* Randy Salyer gave McCarty $400.00 to pay the eight voters. *Id.*

Sometime in 2010, McCarty learned how to change individuals' votes after they had exited the voting booth. [Record No. 123-3, p. 3] The voter would complete his or her ballot but before casting it, McCarty would ask them to leave the booth. *Id.* He would then enter the booth and hit the "back" button—changing the vote to the candidate of his choice. *Id.* McCarty advised Agent Kirk that Larry Shepherd was using the same process at the County Clerk's Office. *Id.*

During the 2010 elections at the Carty Branch Precinct, Hardin, Risner, Shepherd, Randy Salyer, and Chester Howard, a member of the fire department, obscured the voting machines by pulling a fire truck in front of them. *Id.* The group used blue and red tickets to identify voters being paid. [Record No. 109-1, p. 3] A voter would be given a blue ticket upon arrival and, if he or she voted as instructed, the voter was given a red ticket. *Id.* The red ticket could then be exchanged for $50.00. *Id.* McCarty also stated that Hardin, Shepherd, Risner, and others plotted where to place the voting machines at the Bloomington Precinct so that they could "control the situation." *Id.*, p. 2. Allegedly, the group hand-picked individuals who supported their candidates, as well as the very young and elderly, to work the polls. *Id.*

In 2012, McCarty, Risner, Shepherd, and others, set up the voting booths at the Carty Branch Precinct behind a fire truck, as they had done in 2010. [Record No. 123-3, p. 2] McCarty said that no one could see what he was doing and that Shepherd informed him that the election board chosen for the Carty Branch would let him do "whatever [he] wanted to do." *Id.*, p. 3.

McCarty reported that, in 2013 through 2014, McCarty, Shepherd, and Risner became concerned about leaving a paper trail when buying votes. [Record No. 109-1, p. 3] They agreed to eschew the ticket system and began using disposable cell phones. *Id.* Shepherd would use the phones to confirm with Risner that an individual had voted correctly so that Risner could pay them for their vote. *Id.*

Prior to the 2014 election, McCarty became upset with Shepherd because Shepherd would not allow McCarty's brother Robbie to choose the precinct officers at Carty Branch. [Record No. 109-1, p. 4] Robbie had been the Carty Branch Precinct Sheriff in 2012. [Record

No. 123-3, p. 3]   Shepherd told McCarty that Shepherd had to do what was best for him in 2014. [Record No. 109-1, p. 4]

In late 2013, McCarty and Risner registered Jamie Gibson to vote. *Id.* In the spring of 2014, prior to the election, Gibson sent McCarty a text message demanding $50.00. *Id.* Gibson said if Risner did not pay him, he was going to the FBI. Risner asked McCarty to pay Gibson, but McCarty refused. *Id.* McCarty "knew through Larry Shepherd" that Gibson had not voted. *Id.* Also, prior to the 2014 primary election, Gary Risner gave McCarty $300.00 for buying votes. *Id.*, p. 5. According to McCarty, he bought several votes with the money.

McCarty also alleges that members of the conspiracy graveled voters' private driveways in exchange for votes. Prior to the 2010 election, Charles Hardin had an open account in his name at Eagle Stone Quarry. *Id.*, p. 2. Hardin asked Evan Green to gravel specific individuals' private driveways with gravel he obtained using Hardin's account at the quarry. *Id.* McCarty accompanied Green when he went to gravel some of the driveways. *Id.* McCarty told some of the homeowners that the gravel was from Hardin and instructed them to vote for him. *Id.* In 2014, McCarty had a conversation with Risner about the upcoming election during which Risner advised McCarty that they had "enough gravel to bury the county." [Record No. 109-1, p. 1]

## II.

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The Court previously determined that McCarty's testimony regarding the 2010 election cycle is admissible as background evidence and, in the alternative, under Rule 404(b). [Record No. 114] The Court will now

address Shepherd's arguments with respect to that same evidence, as well as Shepherd's and Risner's arguments regarding the additional evidence relating to the elections that took place from 2002 through 2012.

### A.     Background Evidence

Background or *res gestae* evidence is an exception to Rule 404(b) and consists of acts that are "inextricably intertwined" with the charged offense. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Generally, background evidence is a "prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* There must be a very close temporal, spatial, or causal connection between the purported background evidence and the charged conduct. *United States v. Clay*, 667 F.3d 689, 698 (6th Cir. 2012).

Both Shepherd and Risner argue that McCarty's proposed testimony is not background evidence because the events on which it is based are too remote. As the Court noted in its Order denying Risner's previous motion *in limine*, however, temporal proximity is measured differently in cases involving political elections. [Record No. 114, p. 4] *See also United States v. Adams*, 722 F.3d 788, 811 (6th Cir. 2013). Based on the nature of elections, vote buying cannot occur every day, so evidence from prior years is not as remote as it might be in other types of cases. *Id.* The earliest conduct mentioned in McCarty's statements occurred in 2002. Under these circumstances, the Court finds that the background evidence has a sufficiently close temporal connection with the charged conduct.

The temporal connection is bolstered by a close causal connection. McCarty's statements serve as a prelude to and complete the story of the charged crimes by explaining

Risner's and Shepherd's knowledge of vote buying, their respective roles in the conspiracy, and the circumstances in which the conspiracy allegedly took root. *See id.* at 811–12. Count 1 of the Superseding Indictment charges the defendants with conspiring to agreeing to pay and offering to pay persons for voting for Charles Hardin, Renee Shepherd, and Gary Risner. [Record No. 60] McCarty explains who Charles Hardin and Renee Shepherd are and how they fit into the series of events. Further, the evidence provides the background of how McCarty became involved with the defendants and eventually became part of their inner circle. This testimony can be used explain the development of the alleged illegal relationship between the parties and the basis for the mutual trust between the defendants. *See id.* at 812.

### B. Rule 404(b)

Having concluded that the challenged testimony is admissible as background evidence, the Court is not required to consider its admissibility under Rule 404(b). Because McCarty's anticipated testimony is admissible for limited purposes under Rule 404(b)(2), however, the Court will discuss the applicable three-step test. *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003). First, the Court must determine whether there is sufficient evidence that the acts in question occurred. *Id.* Then, the Court must determine whether the evidence is probative of a material issue other than character. *Id.* Finally, the Court must determine whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect. *Id.* With regard to step two, "[e]vidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue' and (3) the evidence is probative with regard to the purpose for which it is offered.'" *Id.*

The government is not required to prove by a preponderance of the evidence that the prior acts occurred, but it must present more than "unsubstantiated innuendo." *United States v. Mack*, 729 F.3d 594, 602 (6th Cir. 2013). As discussed in the Court's Order of May 17, 2016, McCarty's statements bear sufficient indicia of reliability to support a preliminary finding that the acts occurred. McCarty recounted a detailed sequence of events regarding vote buying in Magoffin County from 2002 through 2014. Randy Salyer, one of the main actors in McCarty's version of events, was convicted of vote buying in 2011. *See* 7:11-cr-00005-ART-EBA-1. Additionally, McCarty provided his statements to an FBI agent after having been advised of the consequences of making false statements in violation of 18 U.S.C. § 1001.

As previously determined, the challenged evidence is probative with respect to the defendants' knowledge of vote buying, the nature of the parties' relationships, the defendants' plan, and their intent, to the extent it is at issue. The evidence is also probative of the origin of the alleged conspiracy and will provide a complete story for the jury.

Under Federal Rule of Evidence 403, evidence must be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." To keep evidence out, it is not enough to enough to suggest that the evidence would result in damage to the defendant's case or portray the defendant in a bad light. *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006). Rather, the evidence must "suggest a decision on an improper basis." *United States v. Poulsen*, 655 F.3d 492, 509 (6th Cir. 2011) (citation and alteration omitted).

Both defendants contend that the government has very little evidence that pertains to the charges in the Superseding Indictment. They argue that McCarty's testimony will be

primarily background or 404(b) evidence and will therefore be inflammatory or prejudicial. The defendants' argument is based, in part, on an unsupported assumption that the government will present no evidence other than McCarty's testimony. [Risner's Motion, Record No. 137, p. 4 "7/8 of the trial will consist of testimony for offenses not charged."] Further, McCarty's statements implicate Shepherd and Risner significantly with respect to the election cycle in 2014.

While the evidence will likely prejudice the defendants, there is no indication they will be prejudiced unfairly. *See United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993). If the United States intends to offer this evidence under Rule 404(b) of the Federal Rules of Evidence in addition to offering it as background evidence, and if requested by a party, a clear and concise instruction can identify for the jurors the specific purpose for which the evidence is being offered. *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996). There is reason nothing to suggest that the jurors will not follow such an instruction and limit their consideration of the evidence accordingly.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Defendant Shepherd's motion *in limine* [Record No. 120] is **DENIED.**

2. Defendant Risner's motion *in limine* [Record No. 137] is **DENIED.**

This 28th day of July, 2016.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge